IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELANA DIVISION



FILED
MAR 18 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| GARY L. QUIGG,<br><br>Petitioner,<br><br>vs.<br><br>JIM SALMONSEN, MONTANA BOARD OF PARDONS AND PAROLE, STATE OF MONTANA, ATTORNEY GENERAL OF THE STATE OF MONTANA<br><br>Respondents. | CV 18–77–H–DLC–JTJ<br><br><br>ORDER |

United States Magistrate Judge John T. Johnston entered his Order and Findings and Recommendations in this case on January 7, 2019 (Doc. 18), recommending Petitioner Gary L. Quigg's Petition for Writ of Habeas Corpus (Doc. 1) be dismissed as moot. Quigg, a state prisoner proceeding pro se, filed timely objections. Accordingly, he is entitled to de novo review of those specific issues that are "properly objected to." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

"A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting a legal argument and supporting authority, such that the district court is able to identify

1

the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010) (citation omitted). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or incorporate those arguments by reference." *Id.* As the purpose of the magistrate is to promote efficient use of judicial resources, "there is no benefit if the district court[] is required to review the entire matter de novo because the objecting party merely repeats the arguments rejected by the magistrate." *Id.* (citation omitted). If the objecting party fails to make a proper objection, "this Court follows other courts that have overruled the objections without analysis." *Id.*

Absent objection, this Court reviews findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

I.   **Timeline of Relevant Events**

A timeline of relevant events in this matter is critical to understanding both Judge Johnston's recommendation of dismissal on the grounds of mootness (Doc. 18 at 6–8) and Quigg's objection on the doctrine of "collateral consequences."

2

(Doc. 22 at 2.) Quigg was arrested on September 15, 2015 for violating conditions of his 2006 parole by the state of Montana. (Doc. 1 at 2.) Subsequently, his on-site parole hearing was held at the Yellowstone County Detention Center on September 25, 2015, and a finding of probable cause was made, which allowed for Quigg's transfer to Montana State Prison on October 8, 2015. (Doc. 18 at 3.) Though originally scheduled for October 30, 2015, Quigg's parole revocation hearing was delayed for almost two years, until September 20, 2017. (*Id.* at 3–4.) The reasons for each specific delay, though germane to Quigg's contentions in his habeas petition, are not relevant to either Judge Johnston's recommendations or Quigg's relevant objections. However, these delays were caused substantially by Quigg's indictment, trial, conviction, and sentencing on three federal methamphetamine distribution charges. (Doc. 4 at 4.) Between December 29, 2015 and July 13, 2017, Quigg was in the custody of the United States Marshals Service while he was tried and sentenced on the federal charges. *Id.*

Following his federal sentencing, Quigg was returned to the Montana State Prison where he filed a state habeas petition based on the alleged unconstitutionality of his parole revocation proceedings. This petition was denied on March 13, 2018 by the Montana Supreme Court. *Quigg v. Salmonsen*, OP 18-0098, OR at 12 (Mont. Mar. 13, 2018). In response to this denial, Quigg filed the

petition that is now before this Court on July 2, 2018. Subsequent to filing his habeas petition, Quigg was paroled from Montana State Prison on a federal detainer on October 24, 2018 and began serving his 121-month federal sentence in January of 2019.

## II. Mootness of Quigg's Federal Habeas Petition

Judge Johnston determined that Quigg's claims were moot because federal courts have limited jurisdiction and there was no ongoing injury that could be redressed by a favorable decision. (Doc. 18 at 7.) Article III § 2 of the United States Constitution requires a "case or controversy" for justiciability, which requires the proof or presumption of an injury-in-fact. For a matter to be justiciable under Article III of the Constitution, an individual "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). In the criminal context,

> "An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by the invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained."

4

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *See, e.g., Carafas v. Lavallee*, 391 U.S. 234, 237 (1968). Judge Johnston determined that Quigg's habeas petition was moot because Quigg had been released from state custody to parole on his federal detainer so there was no longer an injury-in-fact that could be redressed by a favorable decision of this Court, and therefore, no case or controversy for the court to resolve. (Doc. 18 at 7.)

### a. Quigg fails to show an injury-in-fact through the doctrine of collateral consequences.

Quigg objects to Judge Johnston's finding of mootness on the argument that the ongoing "collateral consequences" of his wrongful state parole revocation fulfill Article III's injury-in-fact requirement and that he has presented a case-or-controversy that is redressable by a favorable decision from this Court which makes his claim not moot. The collateral consequence Quigg asserts is that he could have already served or been credited with time served for three years of his federal detention had his parole not been revoked. (Doc. 22 at 2.)

The United States Supreme Court recognized that collateral consequences could satisfy the ongoing injury requirement in habeas actions because of the reality that a defendant could be required "to bear the consequences of an assertedly unlawful conviction simply because the path ha[d] been so long that he ha[d] served his sentence." *Carafas*, 391 U.S. at 240; *Spencer*, 523 U.S. at 8.

5

Though defendants were originally required to specifically identify "concrete disadvantages or disabilities" to argue that collateral consequences defeated mootness, courts now "presume that a wrongful criminal conviction has continuing collateral consequences." *Spencer*, 523 U.S. at 8. However, the "presumption of collateral consequences (or [the] willingness to accept hypothetical consequences)" has not been extended to parole revocations, and prisoners petitioning on the legality of their parole revocation are required to prove such consequences actually exist to meet Article III's injury-in-fact requirement. *Id.* at 14. The United States Supreme Court took the opportunity in *Spencer* to affirmatively confirm their holding in *Lane v. Williams*, 455 U.S. 624 (1982),

> "The Doctrine of *Carafas* and *Sibron* [*v. New York*, 342 U.S. 40 (1968)] is not applicable in this case. No civil disabilities such as those present in *Carafas* result from a finding that individual has violated his parole." *Spencer*, 523 U.S. at 12 (citing *Lane*, 455 U.S. at 632).

> "[*Carafas*] concerned existing disabilities; as a result of the petitioner's conviction, he was presently barred from holding offices, voting in state elections, and serving as a juror. This case involves no such disability." *Id.* at 12-13 (citing *Lane*, 455 U.S. at 632–633).

Therefore, for a habeas petition based off the illegality of a parole revocation, not the underlying conviction, to defeat a dismissal on mootness after the petitioner's release from custody, proof of concrete collateral consequences to the petitioner's civil liberties must be shown to satisfy Article III's injury-in-fact requirement.

Quiqq's assertion of collateral consequences is based off similarities between his alleged drug usage, which resulted in the revocation of his parole, and the petitioner's drug usage in *Robbins v. Christianson*, 904 F.2d 492, 494 (1990) which occurred while the petitioner was detained in a half-way house and resulted in the prisoner's transfer to a prison camp and loss of good time credit. In *Robbins*, the petitioner defeated a finding of mootness on his habeas claim after his release from custody by arguing that allowing the drug violation to remain on his record could cause future employers to discriminate against him. *Id.* at 496. The court found that "the possibility of future harm to Robbins [was] not too ephemeral to constitute a collateral consequence for mootness purposes." *Id.* Quigg's reliance upon the court's holding in *Robbins* is misplaced, as the United States Supreme Court expressly abrogated *Robbins* in *Spencer* and held that in habeas petitions based on parole revocations the burden is on the party seeking judicial resolution to clearly allege facts to support Article III standing. *Spencer*, 523 U.S. at 10–11.

Since Quigg is not entitled to a presumption of collateral consequences and he has not asserted any concrete, specific, or ongoing civil disabilities that are traceable to his parole revocation, he has not shown an injury-in-fact. The collateral consequence that Quigg attempts to assert was not caused by his parole

revocation. Quigg's current federal detention is the result of his own illegal conduct. The sentence was imposed by a federal court in separate criminal proceedings and is in no manner related to his state conviction or the revocation of his state parole.

### b. Quigg's injury is not redressable by a favorable decision from this Court.

Quigg's habeas petition requested this Court release him from state custody to begin serving his federal sentence. (Doc. 1 at 11.) As that relief is no longer available because of his release from state custody, his objection now asks this Court to rule in his favor on the merits and provide equitable relief by adjusting his federal sentence downward for the time he served in state custody. (Doc. 22 at 2.) In *Burnett v. Lampert*, 432 F.3d 996 (9th Cir. 2005), the court examined a similar factual scenario and determined the petitioner's habeas petition was moot. In *Burnett*, the petitioner was paroled prior to a ruling on his habeas petition but subsequently violated his parole and was returned to prison. After his return to prison, the petitioner requested the court rule on his original habeas claim and adjust his current sentence downward. The *Burnett* court ruled that the habeas petition was moot because the petitioner was not contesting the "immediate reason" he was in prison—i.e., either the original conviction or the parole violation which returned him to prison. *Id.* at 1000-1001. The court found the two

sentences were not "fungible," meaning one sentence cannot replace or be interchanged with the other. *Id.*

Similarly, Quigg's state sentence and his current federal sentence are not fungible. Quigg's habeas petition does not contest his federal conviction or the sentence under which he is currently detained. "The function of a writ [of habeas corpus] is to secure immediate release from illegal physical custody." *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991). As Quigg is not asserting that his current federal sentence is illegal and he has been released from state custody, his alleged injury is not redressable by a favorable decision from this Court.

Quigg has failed to show either a recognizable injury-in-fact or that his alleged injury can be redressed by a favorable decision from this Court. Therefore, Quigg has not satisfied the Constitutional requirements for justiciability as there is no case or controversy for this Court to resolve, and Judge Johnston's finding that the claim is moot is correct.

### III. Quigg's claim cannot be excepted from the mootness doctrine.

Quigg further attempts to forward an argument that this Court should rule on the merits of his habeas petition because his parole revocation claim falls under the "capable of repetition, yet evading review" exception to the mootness doctrine. He asserts that "Montana parole officials should not be rewarded for their violations . .

. by delaying tactics designed to drag out a favorable outcome to Petitioner and then claim mootness." (Doc. 22 at 4.) Quigg's contention is that the Montana Parole Board could repeatedly violate federal law in every case before it and then use the mootness doctrine to escape habeas review and accountability. *Id.*

Quigg has not shown that his claim meets either of the circumstances required to fall under the "capable of repetition, yet evading review" exception to the mootness doctrine. "[T]he capable-of-repetition doctrine applies only in exceptional situations," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), "where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the complaining party [will] be subject to the same action again." *Spencer*, 523 U.S. at 17 (quoting *Lewis*, 494 U.S. at 481. While the facts in Quigg's case are too convoluted to make the durational circumstance dispositive, Quigg does not have a reasonable expectation that he will be subject to the same action again. For Quigg to be subjected to the same action again he would have to be released from his current 121-month federal prison sentence, arrested on state felony charges, convicted of those charges, sentenced to prison, paroled, and have his parole revoked under a

factually similar scenario. Therefore, the capable-of-repetition exception is not applicable in this case and Judge Johnston's finding of mootness is correct.

Quigg's additional objections simply reassert claims previously made in his petition and do not respond to Judge Johnston's findings and recommendations. As these objections are not proper, this Court overrules them without further analysis.

IV. **Certificate of Appealability**

The Court also determines that Quigg is not entitled to a certificate of appealability. Quigg has failed to show that Judge Johnston's conclusion that his habeas petition is moot because of his release from state custody is incorrect. Further, Quigg's claim is not justiciable because there is no ongoing injury-in-fact and it is not redressable by a favorable decision by this court. Quigg's objections do not "demonstrate 'a substantial showing of the denial of a constitutional right'" and "jurists of reason" would not disagree with this Court's resolution of the claims. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)).

Reviewing the remaining portions of Judge Johnston's Findings and Recommendation for clear error and finding none,

IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 18) are ADOPTED IN FULL, and Quigg's Petition (Doc. 1) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter a judgment of dismissal by separate document.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

DATED this 18th day of March, 2019.

Dana L. Christensen, Chief Judge
United States District Court